UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ABDELFATTAH NIMER, | ) | CASE NO. 1:18CV2269 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| CASE WESTERN RESERVE UNIVERSITY, | ) ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #2) of Plaintiff Abdelfattah Nimer for Temporary Restraining Order and Preliminary Injunction. For the following reasons, the Motion is denied.

## I. FACTUAL BACKGROUND

In 2015, Plaintiff Abdelfattah ("Abood") Nimer enrolled in Case Western Reserve University's ("CWRU's") dual-degree Doctor of Dental Medicine and Master of Public Health program and was scheduled to graduate in May of 2020. The first year focused on the Master of Public Health courses. At the time he enrolled, Plaintiff did not fully realize that he suffers from Attention Deficit Hyperactivity Disorder ("ADHD") and depression, which were both diagnosed recently.

CWRU's School of Dental Medicine maintains a Student Handbook and Plaintiff attached a copy to the Complaint in this action. (ECF DKT #2-2). In part, the Handbook states that the Committee on Student Standing and Promotion ("Committee") will "notify each student in writing of their status at least twice each academic year following the end of

each semester and more frequently if necessary." At its option, the Committee "may place a student on academic probation, require repetition of an academic course, or require a student to withdraw (dismissal from school)." The Committee "determines if a student may proceed with remediation or if another action is appropriate." "Students with failures in 2 or more courses would in most cases be required to repeat the term or year, be asked to withdraw or be dismissed unless extenuating circumstances warrant special consideration." The Handbook emphasizes at page 19: "**It is the responsibility of the student to fulfill all academic requirements. Admission to the program is not assurance that a degree will be granted at the end of four years, or at all**."

In his first semester in the School of Dental Medicine, Plaintiff failed his Dental Anatomy course while passing nine other courses. He considered seeking on-campus learning disability screenings; however, the appointment wait was too lengthy so he tried to improve his academic performance on his own.

On December 12, 2016, the Committee sent Plaintiff a letter advising that his academic status was "Probation" and instructed him on how to remediate the failure in his Dental Anatomy course. Plaintiff remediated and passed the course. According to Plaintiff's allegations, a female student, Jane Doe 1, also failed and remediated the same class.

In the Spring 2017 semester, Plaintiff passed every class except "Head & Neck Structure & Function." He was once again placed on Probation. He remediated, passed the course and was returned to "Good Standing." Jane Doe 1 remediated the same course.

During the Fall 2017 semester, Plaintiff struggled to adjust to his treatment and medication for his conditions. He asked his professor, Dr. Love, who was also a member of

the Committee, for an accommodation for his ADHD relative to some of his class work. Dr. Love did not respond with compassion and later suggested that Plaintiff might need to withdraw from the program.

In the Fall 2017 semester, Plaintiff passed 11 classes and labs, but failed his Endocrine & Reproductive Systems course and his Prosthodontic Technology course (didactic and lab). The Committee sent Plaintiff a letter on December 6, 2017, providing him with a remediation plan and cautioning "that any course failure in the spring 2018 semester **will put you at high risk of being required to repeat the second year of the curriculum**." The Committee also warned: "In order for your schedule to accommodate the repetition of this course, you will be required to miss third year fall clinic sessions during Prosthodontic Technology class time. The Committee cautions you that **this may delay your graduation**."

Plaintiff feared that the remediation plan would delay his graduation in 2020; so, he appealed and sought a hearing with the Committee. The Committee permitted Plaintiff, Jane Doe 1 and Jane Doe 2 to remediate the Prosthodontic Technology lab, held remediation of the didactic course in abeyance and kept Plaintiff on a track to graduate on time.

In the Spring 2018 semester, Plaintiff failed OMF Pathology. To his knowledge, Jane Doe 1 and Jane Doe 2 also failed that course.

On June 1, 2018, the Committee sent Plaintiff a letter advising him that he had been dismissed from the Doctor of Dental Medicine program "due to repeated unsatisfactory academic performance." Plaintiff alleges that he was reprimanded for his academic performance in prior academic years without any acknowledgment of his medical condition. Both Jane Doe 1 and Jane Doe 2 were removed from the program for poor academic

performance. All three students appealed the Committee's decisions and sought reinstatement.

On June 25, 2018, the Committee held an appeal hearing. Plaintiff attended, answered questions and provided explanations as to how he planned to improve. Nevertheless, the Associate Dean for Admissions and Student Affairs emailed Plaintiff and advised him that his appeal had been denied and that his dismissal had been upheld.

Plaintiff learned that Jane Doe 1 and Jane Doe 2 had been reinstated to the program after their appeals were sustained.

Because he believed that the two female students had been treated substantially more favorably, Plaintiff initiated an investigation with the University's Office for Inclusion, Diversity and Equal Opportunity ("OIDEO") on July 30, 2018. On September 24, 2018, the OIDEO issued a report (ECF DKT #9-2) affirming the University's decision to dismiss Plaintiff from the program and finding that other students who were remediated on appeal failed less credit hours, failed fewer courses and/or had a higher GPA. According to the report, the Committee had asked Plaintiff for a plan for how he intended to succeed academically going forward. The Committee was not satisfied with his response. The report concluded:

> The investigation is complete and it is OIDEO's finding that the academic dismissal and appeal hearing process was proper and did not reflect discriminatory practices by the Committee based upon gender. Additionally, the professor's grading mechanism does not reflect inconsistencies or discrimination under the university policy or the American Disabilities Act. No violation of the university's non-discrimination policy has occurred.

In his Verified Complaint, Plaintiff brings claims for Selective Enforcement and Erroneous Outcome under Title IX; Unlawful Retaliation for Seeking Accommodations under

the Americans with Disabilities Act ("ADA"); Breach of Contract; Promissory Estoppel; Spoliation (destruction of recordings of appeal hearing); and Injunctive Relief. Further, Plaintiff alleges that unless CWRU is enjoined immediately from enforcing its decision to remove him from the program, Plaintiff will miss significant classroom and clinic work, will miss crucial examinations and potentially the entire 2018-2019 academic year. Plaintiff seeks an injunction requiring CWRU to reinstate him to the Doctor of Dental Medicine program, Class of 2020.

In his Reply Brief, Plaintiff reiterates that he simply seeks to be treated like the female students who performed the same as him [sic], and he describes with more specificity the injunctive relief he seeks:

(a) During the pendency of this case, Defendant shall allow Plaintiff to participate in all didactic courses associated with the third-year of the curriculum, with all Fall 2018 semester didactic exams and didactic assignments to be completed by the end of the semester.

(b) Defendant shall similarly allow Plaintiff to participate in all clinical work associated with the third-year curriculum.

(c) Plaintiff shall participate in, and Defendant shall provide, Board review sessions, three times a week, two hours a session, as referenced in the June 11, 2018 email of Dr. Kristin Williams.

(d) Defendant shall permit Plaintiff to take the NBDE I examination in November 2018.

## II. LAW AND ANALYSIS

**Standard of Review**

Injunctive relief is an extraordinary remedy and is issued cautiously and sparingly. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-313 (1982).

Four factors must be considered when deciding whether to grant an injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether there is a threat of irreparable harm to the movant; (3) whether others will suffer substantial harm as a result of the injunction, should it issue; and (4) whether the public interest will be served by the injunction. *See Rock & Roll Hall of Fame and Museum, Inc. v. Gentile Prods.*, 134 F. 3d 749, 753 (6th Cir. 1998); *Vittitow v. Upper Arlington*, 43 F. 3d 1100, 1109 (6th Cir. 1995) (the four factors are "not prerequisites to be met, but factors to be balanced."); *D.B. v. Lafon*, 2007 U.S. App. LEXIS 3886 (6th Cir. 2007). While no single factor will be determinative as to the appropriateness of the equitable relief sought, (*In re DeLorean Motor Co.*, 755 F. 2d 1223, 1229 (6th Cir. 1985)), "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F. 3d 620, 625 (6th Cir. 2000).

The moving party must establish its case by clear and convincing evidence. *See Deck v. City of Toledo*, 29 F. Supp. 2d 431, 433 (N.D. Ohio 1998), *citing Garlock, Inc., v. United Seal, Inc.*, 404 F. 2d 256, 257 (6th Cir. 1968). Clear and convincing evidence must produce a firm belief about the facts to be proved. It must be more than evidence that simply outweighs or overbalances the evidence opposed to it.

The purpose of a preliminary injunction is to preserve the status quo. *Procter & Gamble v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996).

**Review of academic decisions**

"University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." *Oser v. Capital University Law School*, No. 2:09-cv-709, 2009 WL 2913919 *5 (S.D.Ohio Sept. 8, 2009) quoting *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 n. 11 (1985). Universities must have the freedom to choose "who may teach, what may be taught, how it shall be taught, and who may be admitted to study." *Regents*, 474 U.S. at 226. "It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking in wisdom or compassion." *Wood v. Strickland*, 420 U.S. 308, 326 (1975).

In this case, after granting Plaintiff second chances in at least two previous semesters, CWRU exercised its judgment and dismissed Plaintiff from the School of Dental Medicine for repeated unsatisfactory academic performance. The Court is loathe to second-guess the unanimous decision of the Student Standing and Promotion Committee as to a student's right to promotion or graduation.

**Title IX**

Plaintiff insists he can show that similarly situated female students were permitted to continue in the Doctor of Dental Medicine program while he, a male student, was held to a higher standard and dismissed from the program in violation of Title IX.

CWRU asserts that the situations for the female students were distinguishable. One female student who had her dismissal overturned, failed 10.5 credit hours and was ranked 69 out of 76 students. The other female student failed 12 credit hours and was ranked 71 out of

76 students. Plaintiff failed 15 credit hours and had a class ranking of 75 out of 76 students in the program. In addition, unlike the plans for success outlined to the Committee by the females, Plaintiff's plan was deemed unsatisfactory. As stated in the OIDEO investigatory report, neither gender nor disability factored into the Committee's decision.

Plaintiff counters by asserting that CWRU has identified the wrong comparators. Plaintiff contends that he and the female students he identifies were in exceedingly similar positions, although the females were permitted to continue in their studies. The females failed nearly the same number of courses and those courses were "key" to progressing in the Doctor of Dental Medicine program. The student Plaintiff names "Jane Doe 2" was ranked 73 out of 76 students.

The Court is reluctant to decide such a seriously contested issue in an expedited Rule 65 proceeding. In light of the controverted facts, Plaintiff has not shown, by clear and convincing evidence, a substantial likelihood of success on the merits of his gender discrimination claim under Title IX.

**Breach of Contract/Promissory Estoppel**

Plaintiff contends that he is likely to prevail on his Breach of Contract/Promissory Estoppel claim. In Ohio, when a student enrolls in a college or university and pays the tuition, a contractual relationship is created. *Savoy v. Univ. of Akron*, 15 N.E.3d 430 (10th App. Dist. 2014). The contract terms are generally found in the handbook supplied to the student. Nonetheless, courts avoid interfering with private university contracts unless the institution acts arbitrarily or capriciously. See *Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78, 91-92 (1978).

The Student Handbook Plaintiff received authorizes the Committee on Student Standing and Promotion to review a student's performance and *at its option*, place a student on academic probation, require repetition of an academic course or require a student to withdraw (dismissal from school). (ECF DKT #2-2). Plaintiff recognizes this discretionary authority but argues that it is not unfettered. The University is empowered to dismiss a student in certain circumstances but the power must be exercised fairly and even-handedly.

The Committee notified Plaintiff in writing on December 6, 2017 that any course failure in the spring 2018 semester put him "at high risk of being required to repeat the second year of the curriculum." When Plaintiff failed one class in the Spring of 2018, he was summarily dismissed instead. For Plaintiff, this was a breach of the commitment set forth in the Handbook, an "arbitrary about-face from the Committee's prior representations," and an abuse of the Committee's discretion.

In Plaintiff's view, not only did the University breach its contract with Plaintiff, but he reasonably relied on the promise that a course failure would result in repetition of the school year, not in dismissal.

CWRU asserts that the Committee on Student Standing and Promotion has broad latitude in reviewing a student's performance and in fashioning the appropriate response to academic failures. The December 6, 2017 letter warned of possible consequences facing Plaintiff but did not preclude the Committee's other options.

The Court notes that the December 6, 2017 letter also cautions that remediation of course failures may delay graduation. (ECF DKT #1-4). Plaintiff, therefore, was placed on notice in writing. The Student Handbook also emphasizes: "Admission to the program is not

assurance that a degree will be granted at the end of four years, or at all." (ECF DKT #2-2).

On the record before it, the Court does not have clear and convincing evidence of meritorious claims of breach of contract, of arbitrary or capricious exercise of discretion nor of reasonable reliance.

**Retaliation for seeking accommodation**

Plaintiff contends that there is sufficient evidence of a causal connection between his protected activity (requesting accommodations for a disability) and his dismissal from the Doctor of Dental Medicine program to support the issuance of an injunction. CWRU asserts that all of the accommodations Plaintiff requested were given to him.

Plaintiff points to disdainful comments from one of his professors who was also a member of the Committee and argues that this professor's views motivated the Committee's decision.

Plaintiff also argues that his requests for accommodations were made in temporal proximity to his dismissal which supports a prima facie case under the ADA.

The Court acknowledges the minimal burden Plaintiff bears in making a prima facie retaliation claim. However, satisfying that hurdle does not provide the clear and convincing evidence for prevailing on the merits necessary for injunctive relief.

**Irreparable injury**

Plaintiff maintains that he will be irreparably harmed if he is not reinstated immediately to the Doctor of Dental Medicine program. He will not be able to graduate with the 2020 class and the gap created in his education will affect the remainder of his professional life.

There is federal precedent that a delay in graduation cannot constitute irreparable harm. *Oser*, Case No. 2:09-cv-709, 2009 WL 2913919 (S.D. Ohio Sept. 8, 2009); *Baer v. National Bd. of Medical Examiners*, 392 F.Supp.2d 42 (D.Mass. 2005).

Even so, Plaintiff insists that it is not just the delay, but the gap in his educational progress which will raise questions with employers and admissions committees. He believes that his reputation and career prospects will be damaged in a manner that monetary relief cannot mend.

In its analysis, the Court does not possess the expertise and must rely upon the academicians who contend that Plaintiff is, even now, beyond the time within which he could retake the courses he failed, finish any courses that are incomplete and pass the national examination to allow for graduation in 2020. Even if Plaintiff had been permitted to repeat his second year of the curriculum as he believes he was promised, it is not evident to the Court that graduation with the Class of 2020 would be feasible.

Plaintiff submits a number of declarations of CWRU students and graduates who state that Plaintiff could complete his requirements and graduate as he planned if he is reinstated now. Plaintiff, himself, submits his own declaration stating that he could successfully complete the program if he begins the third year immediately. Furthermore, he states that the job market for dentists is changing and that employment opportunities will be significantly different in two years. (ECF DKT #9-7). The Court finds that the declarations of fellow students constitute opinion only and Plaintiff does not possess the expert knowledge necessary to describe the employment landscape for dentists now or to predict the job opportunities for dentists in the future. A claim of injury must be based on reliable evidence

-11-

and what Plaintiff offers is not.

It is not clear that absent an injunction at this point in time, that Plaintiff will be unable to complete his education at CWRU (albeit with a later graduation date), finish dental school elsewhere or pursue his chosen profession.

### III. CONCLUSION

Plaintiff has failed to demonstrate, by clear and convincing evidence, a strong or substantial likelihood of success on the merits of his claims. Plaintiff has failed to show by clear and convincing evidence that he will be irreparably injured if the Court does not order his immediate reinstatement to the Doctor of Dental Medicine program. Granting injunctive relief would interfere with CWRU's ability to maintain academic and professional standards in the Dental School; and the public has an interest in having confidence that members of the dental profession are appropriately qualified to practice. A preliminary injunction is meant to preserve the status quo but Plaintiff seeks relief well beyond that.

Therefore, the Motion (ECF DKT #2) of Plaintiff Abdelfattah Nimer for Temporary Restraining Order and Preliminary Injunction is denied.

**IT IS SO ORDERED.**

                                              s/ Christopher A. Boyko
                                              **CHRISTOPHER A. BOYKO**
                                              **United States District Judge**

Dated: October 22, 2018